BARBARA EZIKOVICH *v.* COMMISSION ON HUMAN
RIGHTS AND OPPORTUNITIES ET AL.
(AC 18470)

Foti, Zarella and Dupont, Js.

Argued January 13—officially released May 23, 2000

*Winona W. Zimberlin,* for the appellant (plaintiff).

*Charles Krich,* for the appellee (named defendant).

*Edward F. Osswalt,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Richard J. Lynch,* assistant attorney general, for the appellee (defendant department of public health).

*Opinion*

FOTI, J. The plaintiff, Barbara Ezikovich, appeals from the trial court's judgment dismissing her appeal from the decision by the named defendant, the commission on human rights and opportunities (commission), which dismissed her employment discrimination complaint against the defendant department of public health (department). The plaintiff claims that the court improperly (1) concluded that the commission conducted an adequate investigation before dismissing the complaint, (2) concluded that the commission applied the proper legal standard for determining reasonable accommodation, (3) determined that the commission's consideration of the department's collective bargaining agreement was harmless and (4) declined to consider General Statutes § 5-248c. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. Since 1980, the plaintiff has been employed by the department as a health program associate. In 1989, the plaintiff was diagnosed with chronic fatigue syndrome, a disorder that, according to the plaintiff, "results in reduced stamina which makes it difficult to carry out normal life

activities, especially in the morning." For several years, the plaintiff was granted a work accommodation by the department. For example, in 1992, the department authorized the plaintiff to work out of the department's Norwich office up to three days a week; she was to work out of her official Hartford office the remaining days of the week.[1] In granting this accommodation, the department explicitly noted that due to the department's upcoming reorganization, the accommodation was conditional and would be reassessed when impacts of the impending reorganization were better understood.

In June, 1995, the plaintiff made a formal work accommodation request with the department, asking that she be allowed to work "[a] no fixed start to work schedule."[2] The department, while refusing the plaintiff's request for a schedule that would allow her to work when she is able, offered to accommodate the plaintiff with a modified work schedule, which most closely approximated the relaxed hours that the plaintiff already was working. Under the department's proposed accommodation, the plaintiff was allowed to work several days a week in the department's Norwich office, which was located closer to the plaintiff's residence.[3] Additionally, despite the plaintiff's reduced schedule, the department would continue to classify the plaintiff as a full-time employee.

The plaintiff was allowed to work out of the Norwich office until 1995, when the department underwent a

[1] Also, with the informal consent of her supervisor, the plaintiff did not observe a strict hourly schedule, but would report to work whenever she felt able, usually between 11 a.m. and noon.

[2] The plaintiff further requested that she "be able to work at least thirty minutes beyond the usual close of business when able," that she be allowed "the option of working through lunch when . . . able," and that she be given "a key to the rear door [of the office building]."

[3] The plaintiff worked at the Norwich office Monday, Tuesday and Friday from 11:30 a.m. to 4:30 p.m.; she worked at the Hartford office on Wednesday and Thursday from 11:30 a.m. to 5 p.m.

reorganization in conjunction with the legislatively mandated closing of state hospitals in Norwich and Newtown. In October, 1995, all of the department's Norwich employees, including the plaintiff, were relocated to the department's Hartford office. While this reorganization required that the plaintiff work exclusively out of the Hartford office, the department continued to accommodate the plaintiff by allowing her to work a reduced work schedule.

Dissatisfied with the department's accommodations, the plaintiff filed her complaint with the commission in November, 1995. After an investigation, the commission determined that the department had offered the plaintiff a reasonable work accommodation and that there was no reasonable cause for believing that a discriminatory act had occurred. Accordingly, the commission dismissed the plaintiff's complaint.

The plaintiff appealed to the trial court from the decision of the commission. The court agreed with the commission's finding that the department had offered the plaintiff a reasonable work accommodation and, therefore, dismissed the plaintiff's complaint. This appeal ensued.

I

The plaintiff first claims that the trial court improperly concluded that the commission conducted an adequate investigation before dismissing the plaintiff's complaint. We disagree.

"We first note the limited scope of review to be exercised by the trial court in reviewing a [commission] determination that there is no reasonable cause to believe that a discriminatory practice has been committed. Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to sup-

port the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . This substantial evidence rule is embodied in General Statutes § 4-183 (j) (5) and (6).

"The substantial evidence standard is satisfied if the record provides a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The issue before the trial court, therefore, was whether there was a substantial basis in the record to support the commission's finding of no reasonable cause for either the discrimination or retaliation allegation. As [our Supreme Court] noted previously, the term reasonable cause as used in [General Statutes] § 46a-83 is synonymous with the term probable cause. . . . Probable cause is a bona fide belief in the existence of facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. . . . Probable cause is a flexible common sense standard. . . . It deals with probabilities, and the application of

the factual and practical considerations of everyday life on which reasonable and prudent men act. . . . In order to determine whether there was substantial evidence in the record to support the commission's determination, the commission must have conducted a complete and thorough investigation." (Citations omitted; internal quotation marks omitted.) *Dufraine* v. *Commission on Human Rights & Opportunities*, 236 Conn. 250, 259–61, 673 A.2d 101 (1996). We conclude that the trial court properly determined that the commission conducted a thorough investigation.

In her attack on the adequacy of the commission's investigation, the plaintiff argues that the commission's finding did not explicitly address the cost-benefit analysis of the plaintiff's requested accommodation. The plaintiff's argument is unavailing because there was adequate evidence in the record for the court to have concluded that the commission properly investigated this issue. In its memorandum of decision, the court explicitly noted that the commission investigator interviewed department representatives regarding the costs associated with the plaintiff's proposed work accommodations. It is, therefore, quite clear that the commission investigated this aspect of the plaintiff's complaint.

The plaintiff also attacks the adequacy of the commission's investigation by claiming that the commission investigator failed to interview certain witnesses concerning scheduling and work hours. This argument, too, lacks merit. A review of the record clearly shows that the subject of scheduling and work hours was in fact addressed in documents submitted by both the plaintiff and the department. The court correctly found that the commission adequately investigated this subject.

Next, the plaintiff attacks the methods by which the commission conducted some of its interviews. The plaintiff complains that certain department employees

were interviewed in the presence of their supervisors. This, according to the plaintiff, affected the candor of the witnesses and resulted in an ineffective investigation. We find nothing in the record to support the plaintiff's claim and conclude that the commission's interviewing techniques did not undermine the thoroughness of their investigation.

Finally, the plaintiff claims that the commission's investigation was inadequate because the commission failed to interview witnesses regarding the "issue of discrimination in the manner in which the plaintiff was required to keep her time sheets." During the commission investigation, the plaintiff introduced evidence that she was required to record her work hours to the nearest minute while other employees were allowed to record their time to the nearest one-quarter of an hour. The plaintiff now claims that the commission failed to investigate this aspect of the plaintiff's claim. The plaintiff's argument fails, however, because the record contains ample evidence that the plaintiff had a history of inaccurately reporting her work hours. There was, therefore, sufficient evidence from which the commission could have inferred that the strict timekeeping requirements were necessitated by the plaintiff's misrepresentation of the hours she worked and were not the result of any discrimination on the part of the department. We conclude that the commission's investigation was sufficiently thorough and that there was substantial evidence in the record to support the commission's determination that there was no reasonable cause to believe that the department discriminated against the plaintiff.

II

The plaintiff next claims that the court improperly concluded that the commission applied the correct standard in determining whether the department afforded

the plaintiff a reasonable work accommodation. We disagree.

In her underlying complaint to the commission, the plaintiff claimed that she suffered discrimination because of her physical disability and that the department violated General Statutes §§ 46a-58 (a), 46a-60 (a) (1) and (4), and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. We note that although her claim is based largely on alleged violations of state statutes, "we review federal precedent concerning employment discrimination for guidance in enforcing our own antidiscrimination statutes." *Levy* v. *Commission on Human Rights & Opportunities*, 236 Conn. 96, 103, 671 A.2d 349 (1996).

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability . . . ." 42 U.S.C. § 12112 (a). The term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . ." 42 U.S.C. § 12112 (b) (5) (A). Under the ADA, "a plaintiff can state a claim for discrimination based upon her employer's failure to accommodate her handicap by alleging facts showing (1) that the employer is subject to the statute under which the claim is brought, (2) that she is an individual with a disability within the meaning of the statute in question, (3) that, with or without reasonable accommodation, she could perform the essential functions of the job, and (4) that the employer had notice of the plaintiff's disability and failed to provide such accommodation." *Lyons* v. *Legal Aid Society*, 68 F.3d 1512, 1515 (2d Cir. 1995). Of these four factors, the only issue in dispute in the present case is whether the department failed to provide the plaintiff with a reasonable work accommodation.[4]

---

[4] The department did not challenge the commission's finding that the plaintiff's chronic fatigue syndrome constituted a physical disability that

We conclude that the court properly found that the commission correctly determined that the department had provided the plaintiff with a reasonable accommodation. The ADA does not provide a closed-end definition of what constitutes a reasonable accommodation. Instead, the ADA sets out a nonexclusive list of different methods of satisfying the requirement of reasonable accommodation, including "job restructuring, part-time or modified work schedules . . . ." 42 U.S.C. § 12111 (9) (B). The plaintiff claimed that because she suffered from chronic fatigue syndrome, she could not arrive at work before 11:30 a.m. To accommodate the plaintiff's needs, the department has allowed her to work a relaxed, part-time schedule, while still classifying her as a full-time employee.

Dissatisfied with the part-time schedule enacted by the department, the plaintiff argues that she should be allowed to work "a no fixed start to work schedule" when she is able. While the plaintiff would prefer a flexible, open-ended work schedule, "[a]n employer is not obligated to provide an employee the accommodation [s]he requests or prefers, the employer need only provide some reasonable accommodation." (Internal quotation marks omitted.) *Malabarba* v. *Chicago Tribune Co.*, 149 F.3d 690, 699 (7th Cir. 1998). The part-time schedule offered by the department effectively accommodated the plaintiff's condition while permitting the department to satisfy its own management needs of having the plaintiff work a regular and predictable schedule. The commission properly found that the department's accommodation was reasonable.[5]

rendered her a member of a protected class for the purpose of the commission's discrimination analysis.

[5] Furthermore, the "no fixed start to work schedule" proposed by the plaintiff would itself be unreasonable. To establish a successful ADA claim, a plaintiff still must be able to perform the essential functions of her job, albeit with accommodation, and numerous federal courts "have recognized that attendance at work is a necessary job function. 'An employee who is "unable to come to work on a regular basis [is] unable to satisfy any of the

## III

The plaintiff next claims that the court improperly found that the commission's consideration of the department's collective bargaining agreement was harmless. In its decision finding that the department had reasonably accommodated the plaintiff, the commission mentioned that under the agreement, the plaintiff would need to be compensated with overtime pay if she were to work past 4:30 p.m. The plaintiff argues that the commission's consideration of the agreement was improper because the commission's interpretation of the agreement was incorrect and, even if the interpretation was correct, the agreement can not be used to justify discriminatory behavior.

We need not address the plaintiff's argument because we conclude that the court correctly determined that the commission's discussion of the collective bargaining agreement, even if it was erroneous, was harmless because there was substantial evidence in the record to support the commission's decision. Our Supreme Court has held that "[h]armless error analysis is available in the administrative context. The Uniform Administrative Procedure Act [General Statutes § 4-166 et seq.] provides that if an individual's substantial rights have been prejudiced, the case should be remanded unless but one conclusion is required by law." (Internal

functions of the job in question, much less the essential ones." ' *Moore* v. *Payless Shoe Source, Inc.*, 139 F.3d 1210, 1213 (8th Cir. 1998) (quoting *Halperin* v. *Abacus Tech. Corp.*, 128 F.3d 191, 198 (4th Cir. 1997)). Other circuits have also held that regular and reliable attendance is a necessary element of most jobs. See *Rogers* v. *Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) ('Because [the plaintiff] could not attend work, he [was] not a "qualified individual with a disability" under the ADA.'); *Carr* v. *Reno*, 23 F.3d 525, 530 (D.C. Cir. 1994) (coming to work regularly was an 'essential function'); *Tyndall* v. *Nat'l Educ. Centers*, 31 F.3d 209, 213 (4th Cir. 1994) ('[A] regular and reliable level of attendance is a necessary element of most jobs.')." *Nesser* v. *Trans World Airlines, Inc.*, 160 F.3d 442, 445 (8th Cir. 1998).

quotation marks omitted.) *Ann Howard's Apricots Restaurant, Inc.* v. *Commission on Human Rights & Opportunities*, 237 Conn. 209, 227–28, 676 A.2d 844 (1996). The court in *Ann Howard's Apricots Restaurant, Inc.*, concluded that "because there was significant evidence in the record, apart from [the complainant's] testimony, from which the hearing officer could have concluded that the [employer] had impermissibly discriminated against [the complainant], the hearing officer's failure to exclude that testimony was harmless and we need not decide whether the hearing officer abused her discretion." Id., 228. Similarly, there was sufficient evidence in this case, apart from the collective bargaining agreement, for the commission to have determined that the department's accommodation was reasonable. Significantly, the plaintiff herself claimed that she could not work a full day and, given the plaintiff's supervisory requirements, there was adequate independent evidence from which the commission could have determined that the department's accommodation was reasonable.

IV

Finally, the plaintiff claims that the court improperly declined to consider the effect of § 5-248c. General Statutes § 5-248c (a) provides: "The Commissioner of Administrative Services, in conjunction with the Secretary of the Office of Policy and Management, shall implement a voluntary schedule reduction program under which permanent state employees may, with the approval of their appointing authority, take unpaid leave consisting of individual *prescheduled* days or partial days off, without loss of seniority, benefits, longevity, retirement credit, sick leave, vacation or earned overtime accumulation." (Emphasis added.) In her complaint before the commission, the plaintiff claimed that the department had discriminated against her by refusing to grant her proposed workplace accommodation,

which essentially was an open-ended work schedule in which her work hours would change according to her stamina on any given day.

The plaintiff did not make any arguments to the commission concerning § 5-248c and first attempted to raise this argument in her appeal to the trial court. The court, however, refused to allow the plaintiff to present evidence on this claim. According to § 4-183 (h), the court may allow an appellant from an administrative decision to present additional evidence if "it is shown to the satisfaction of the court that the additional evidence is material . . . ." As discussed previously, the plaintiff's proposed accommodation involved an open-ended, "work when able" arrangement. Section 5-248c, in contrast, contemplates the granting of *prescheduled* days off or partial days off. The scheduling program outlined in § 5-248c is inapposite to the accommodation requested by the plaintiff. The statute was, therefore, immaterial to the plaintiff's claim, and the court correctly refused to allow the plaintiff to present additional evidence regarding § 5-248c.

The judgment is affirmed.

In this opinion the other judges concurred.