IRIS W. LORD *v.* PAUL H. MANSFIELD ET AL.
(AC 17122)
(AC 18035)

O'Connell, C. J., and Foti and Daly, Js.

Argued June 8—officially released August 25, 1998

*Max F. Brunswick*, with whom, on the brief, was *John R. Williams*, for the appellant (plaintiff).

*Frederick W. Krug*, for the appellees (defendants).

FOTI, J. In the first of these consolidated appeals, the plaintiff appeals from the trial court's judgment rendered in favor of the defendants on the plaintiff's complaint and on the defendants' counterclaim. The second appeal is the plaintiff's appeal from the trial court's judgment of civil contempt. In the first appeal (17122), the plaintiff claims that the trial court improperly (1) excluded evidence, (2) limited the plaintiff's testimony, (3) refused to hear rebuttal evidence, (4) denied the plaintiff's motion to amend her complaint and (5) concluded that the plaintiff's actions were extreme and outrageous, intentionally inflicting emotional distress on the defendants. In the second appeal (18035), the plaintiff claims that the trial court improperly awarded a compensatory amount to the defendants after the plaintiff's actions were found to be in contempt of a court order.

I

The parties are owners of adjoining parcels of land in Woodbury. The plaintiff commenced this action seeking a judgment declaring that she had acquired, by adverse possession, a strip of land between the common boundary of the two properties and a split rail fence about six to eight feet from that boundary. Her complaint also sought damages for the defendants' intentional infliction of emotional distress in connection with this property dispute. The defendants disputed the claims and filed a counterclaim asking the court to confirm the boundary line as they requested, and to award damages for the plaintiff's intentional infliction of emotional distress.

On April 8, 1997, after a lengthy trial, the trial court filed its twenty-two page memorandum of decision, finding against the plaintiff on her complaint and for the defendants on their counterclaim. Each defendant

was awarded $15,000 in compensatory damages, and the court further granted the defendants a permanent injunction in accordance with their request for relief.[1] With respect to the defendants' claim for punitive damages for the plaintiff's intentional infliction of emotional distress, the trial court concluded that such were warranted and appropriate, and scheduled a supplemental hearing on April 25, 1997, "for evidence about the defendants' litigation expenses."

On April 25, 1997, the plaintiff filed her appeal from "the memorandum of decision and judgment dated April 8, 1997." Thereafter, on July 15, 1997, the trial court filed its seven page memorandum of decision, awarding the defendants punitive damages of $1815.

The trial court's original judgment of April 8, 1997, disposed of both counts of the plaintiff's complaint and, therefore, constitutes an appealable final judgment as to the complaint. Practice Book (1998 Rev.) § 61-2.[2] The plaintiff's first four issues on appeal relate to that judgment and may be reviewed by this court. Her fifth issue, however, challenges the trial court's judgment on the defendants' counterclaim for intentional infliction of emotional distress. Because this appeal was taken prior to the July 15, 1997 determination as to the amount of punitive damages due the defendants on that claim, we must, as a preliminary matter, decide whether an appealable final judgment had been rendered on the counterclaim at the time the appeal was taken. The

---

[1] The plaintiff, together with her agents and servants, were "permanently enjoined from trespassing or entering on the property of the defendants known as 164 Sycamore Avenue, Woodbury, including the disputed property," and were "further enjoined from any and all further acts of harassment against the defendants."

[2] Practice Book (1998 Rev.) § 61-2 provides in relevant part: "When judgment has been rendered on an entire complaint, counterclaim or cross complaint, whether by judgment . . . or otherwise, such judgment shall constitute a final judgment. . . ."

parties were notified[3] and addressed this issue, which appears to be one of first impression, at oral argument.

Generally, a judgment as to liability only that leaves the amount of damages unresolved is not an appealable final judgment. *Stroiney* v. *Crescent Lake Tax District*, 197 Conn. 82, 84, 495 A.2d 1063 (1985). "It is well established that appellate courts in this state do not have jurisdiction to entertain appeals not taken from final judgments. See General Statutes § 52-263; *State* v. *Curcio*, 191 Conn. 27, 30, 463 A.2d 566 (1983). The lack of a final judgment is a jurisdictional defect that mandates dismissal." *Connecticut National Bank* v. *Rytman*, 241 Conn. 24, 34, 694 A.2d 1246 (1997). While a judgment is not final where the trial court has yet to rule on a claim for prejudgment interest; *Balf Co.* v. *Spera Construction Co.*, 222 Conn. 211, 214–15, 608 A.2d 682 (1992); a judgment on the merits is final for purposes of appeal even if the recoverability or amount of counsel fees remains to be determined. *Paranteau* v. *DeVita*, 208 Conn. 515, 523, 544 A.2d 634 (1988).

In distinguishing prejudgment interest from attorney's fees, the *Balf Co.* court concluded that prejudgment interest was part of the plaintiff's compensation and not collateral to the judgment in the main cause of action. The court stated that "unlike attorney's fees, which at common law were regarded as an element of costs and therefore not part of the merits judgment . . . prejudgment interest traditionally has been considered part of the compensation due [the] plaintiff. Second,

---

[3] The parties were notified on May 29, 1998, as follows: "The court has directed that the parties should be prepared to address whether that portion of the appeal challenging the award of damages on the counterclaim should be dismissed for lack of a final judgment because the amount of punitive damages had not yet been determined at the time the appeal was taken. See *Stroiney* v. *Crescent Lake Tax District*, 197 Conn. 82, 85, 495 A.2d 1063 (1985); but cf. *Paranteau* v. *DeVita*, 208 Conn. 515, 523, 544 A.2d 634 (1988) (judgment on merits final even though amount of attorney's fees remains to be determined)."

unlike a request for attorney's fees or a motion for costs, a motion for discretionary prejudgment interest does not rais[e] issues wholly collateral to the judgment in the main cause of action . . . nor does it require an inquiry wholly separate from the decision on the merits . . . . In deciding if and how much prejudgment interest should be granted, a district court must examine—or in the case of a postjudgment motion, reexamine— matters encompassed within the merits of the underlying action. . . . *Osterneck* v. *Ernst & Whinney*, [489 U.S. 169, 175–76, 109 S. Ct. 987, 103 L. Ed. 2d 146 (1989)]. Third, the conclusion that a postjudgment motion for discretionary prejudgment interest postpones the finality of a judgment on the merits helps further the important goal of avoiding piecemeal appellate review of judgments. Id., 177." (Internal quotation marks omitted.) *Balf Co.* v. *Spera Construction Co.*, supra, 222 Conn. 214–15.

The Supreme Court in *Balf Co.* held that the plaintiff's right to recovery of prejudgment interest "is part of its claim to be made whole. Whether it succeeds will depend upon an assessment of the underlying merits of the transaction between the parties. An appeal after a resolution of all the issues will afford an appellate court a better opportunity to review in its entirety the alleged 'wrongfulness of the defendant's conduct and the plaintiff's full damages, as well as other matters of equity bearing on the merits of the litigation.' [*Osterneck* v. *Ernst & Whinney*, supra, 489 U.S. 177]." *Balf Co.* v. *Spera Construction Co.*, supra, 222 Conn. 215. Our inquiry, then, is whether punitive damages represent part of the compensation due the plaintiff, as part of her "claim to be made whole." We conclude that they do.

Punitive damages are limited to the plaintiff's litigation expenses less taxable costs. *Berry* v. *Loiseau*, 223 Conn. 786, 827, 614 A.2d 414 (1992). Although attorney's fees may be the primary component of litigation

expenses, and have been regarded as an element of costs and not part of the "merits judgment"; *Balf Co.* v. *Spera Construction Co.*, supra, 222 Conn. 214; punitive damages serve a different end and have a different purpose than attorney's fees. Some purposes are clearly not intended to be for compensation to the plaintiff, i.e., " 'to vindicate the public interest, not that of a particular plaintiff' "; *Freeman* v. *Alamo Management Co.*, 221 Conn. 674, 679, 607 A.2d 370 (1992), quoting M. Wheeler, "The Constitutional Case for Reforming Punitive Damages Procedures," 69 Va. L. Rev. 269, 292 (1983); "not merely to deter a particular defendant from future misconduct but to deter others from committing similar wrongs." *Champagne* v. *Raybestos-Manhattan, Inc.*, 212 Conn. 509, 562–63, 562 A.2d 1100 (1989) (punitive damages awarded as to loss of consortium claim).

Our Supreme Court, however, has observed: "In *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.*, [193 Conn. 208, 477 A.2d 988 (1984)] . . . [w]e affirmed the continuing viability of a long line of cases holding that common law punitive damages serve primarily to compensate the plaintiff for his injuries and, thus, are properly limited to the plaintiff's litigation expenses less taxable costs. . . . We remain convinced that a rule limiting punitive damages awards to the expenses of litigation less taxable costs 'fulfills the salutary purpose of fully compensating a victim for the harm inflicted on him while avoiding the potential for injustice which may result from the exercise of unfettered discretion by a jury.' [Id., 238]." (Citations omitted.) *Berry* v. *Loiseau*, supra, 223 Conn. 827. Punitive damages in Connecticut are not designed "to punish the defendant for his offense but rather to compensate the plaintiff for his injuries." *Miller* v. *Drouin*, 183 Conn. 189, 190, 438 A.2d 863 (1981); see also *Virgo* v. *Lyons*, 209 Conn. 497, 503–504, 551 A.2d 1243 (1988); *Tedesco* v. *Maryland Casualty Co.*, 127 Conn. 533, 538, 18 A.2d

357 (1941); *Doroszka* v. *Lavine*, 111 Conn. 575, 578, 150 A. 692 (1930).

Because we conclude that punitive damages are designed to compensate the injured party fully, we also conclude, as in *Balf Co.*, that the judgment is not final under these circumstances. We therefore dismiss that portion of the plaintiff's appeal challenging the judgment on the defendants' counterclaim.

## II

The plaintiff also appeals from the judgment rendered for the defendants on her complaint. The plaintiff does not challenge any of the trial court's findings of fact. Additionally, the plaintiff does not contest the trial court's ultimate conclusion that she was unable to prove continuous adverse use of the property in dispute for an uninterrupted period of fifteen years, thereby requiring a judgment for the defendants on her claim of adverse possession. We therefore find it unnecessary to set forth the facts as found except as required for each issue.

## A

The plaintiff first claims that the trial court improperly excluded testimony concerning conduct by other members of the defendants' family, specifically their adult children. The proffered evidence was excluded by the court because it found that the acts or statements of nonparties were not relevant in the absence of any foundation that they had acted as agents of the defendants. In addition, the court found that because the defendants' children were not parties to the action, the evidence exceeded "the scope of the allegations in the complaint."

It is well established that a trial court has broad discretion in ruling on the admissibility and relevancy of evidence, and its ruling on evidentiary matters will

be overturned only on a showing of a clear abuse of that discretion. *Sivilla* v. *Philips Medical Systems of North America, Inc.*, 46 Conn. App. 699, 706, 700 A.2d 1179 (1997). "The proffering party bears the burden of establishing the relevance of the offered testimony." *State* v. *Barnes*, 232 Conn. 740, 747, 657 A.2d 611 (1995). "Unless a proper foundation is established, the evidence is irrelevant." *State* v. *Beliveau*, 237 Conn. 576, 586, 678 A.2d 924 (1996).

The trial court concluded that the plaintiff failed to prove any of the allegations of harassment. On appeal, the plaintiff has failed to sustain her burden of demonstrating that the excluded evidence would have in any way affected the result of her emotional distress claim. After reviewing the record, we conclude that the trial court did not abuse its discretion in refusing to admit the evidence.

### B

The plaintiff next claims that the trial court improperly limited her testimony. The record discloses that after the plaintiff had testified for nearly five hours in support of her emotional distress claim, the trial court allowed her one additional hour, commenting that her testimony was "not presented in any sort of reasonable fashion with appropriate respect for the time demands of this court."[4] When the plaintiff failed to complete her testimony within the hour allotted, the court refused to hear further testimony. The plaintiff neither objected nor made an offer of proof as to what she would have said had she been allowed to continue.

Our review of the record does not disclose a clear abuse of discretion in the trial court's actions. The plaintiff, having failed to make an offer of proof, cannot

---

[1] The plaintiff testified initially on September 12, 1996, for nearly five hours. When the trial resumed on November 8, 1996, she completed one additional hour of testimony. Our review of the transcripts discloses that the testimony was not any more organized on the second occasion.

demonstrate that the court's action was harmful. If the plaintiff wanted to preserve this claim for appellate review, she should have presented an offer of proof. See *State* v. *Conrod*, 198 Conn. 592, 597, 504 A.2d 494 (1986). It is the appellant's burden to ensure that we are provided with an adequate appellate record to support her claim. *Barra* v. *Ridgefield Card & Gift Gallery, Ltd.*, 194 Conn. 400, 407, 480 A.2d 552 (1984). "Without an adequate record on which to review the rulings of the trial court, this court must assume that the trial court acted properly. *Jacobsen* v. *Jacobsen*, 177 Conn. 259, 267, 413 A.2d 854 (1979); *Johnson* v. *Newell*, 160 Conn. 269, 277, 278 A.2d 776 (1971)." *State* v. *James L.*, 26 Conn. App. 81, 86, 598 A.2d 663 (1991).

### C

The plaintiff next claims that the trial court improperly refused to allow her to present rebuttal evidence. After the parties had rested on the adverse possession and quiet title counts, the plaintiff sought to present three "rebuttal" witnesses.[5] Because the plaintiff had proceeded on her claim involving emotional distress and had not requested permission or reserved the right to present rebuttal witnesses, the trial court sustained the defendants' objection. The trial court refused to open the first segment of the trial dealing with adverse possession. The plaintiff made no formal offer of proof, but did indicate that the witnesses would testify "that there was no fence between the two parties, the Stevens and the Gibson property, from approximately 1956 to 1962 when the Mansfields purchased their property."

"In order to establish adverse possession, the claimant must oust an owner of possession and keep such owner out uninterruptedly for fifteen years by open,

---

[5] The trial court allowed the plaintiff to present two witnesses who were unavailable to testify during the plaintiff's case-in-chief on the adverse possession count.

visible and exclusive possession under a claim of right with intent to use the property as his own and without the consent of the owner." *Clark* v. *Drska*, 1 Conn. App. 481, 485, 473 A.2d 325 (1984). " 'In the final analysis, whether possession is adverse is a question of fact for the trier.' *Whitney* v. *Turmel*, 180 Conn. 147, 148, 429 A.2d 826 (1980)." *Goodrich* v. *Diodato*, 48 Conn. App. 436, 442, 710 A.2d 818 (1998). Because the trial court concluded, and it has not been disputed, that the plaintiff failed to prove adverse use for a continuous period of fifteen years, the rebuttal testimony would not have been relevant. Therefore, the plaintiff cannot demonstrate harmfulness.

## D

The plaintiff finally claims that the trial court improperly refused to allow her to amend her complaint to conform to the evidence. After the trial had concluded and the parties had fully briefed the issues, the plaintiff filed a motion requesting permission to amend her complaint to add a third count claiming a prescriptive easement and a fourth count alleging that a fence erected by the defendants violated General Statutes § 52-570.[6] The court sustained the defendants' objection.

It is within the discretion of the trial court to grant or deny an amendment; the trial court's decision will not be disturbed unless there is a clear abuse of discretion. *Lawson* v. *Godfried*, 181 Conn. 214, 216–17, 435 A.2d 15 (1980). Here, no such abuse of discretion is clearly evident where the amendment, offered after trial, purported to conform the pleadings to the proof but, in reality, raised two issues neither pleaded nor litigated.

[6] General Statutes § 52-570 provides: "Action for malicious erection of structure. An action may be maintained by the proprietor of any land against the owner or lessee of land adjacent, who maliciously erects any structure thereon, with intent to annoy or injure the plaintiff in his use or disposition of his land."

We have held that "[t]he cause of action of title by adverse possession and of the acquisition of an easement by prescription are two different causes of action." *Sanford* v. *Dimes*, 3 Conn. App. 639, 640, 491 A.2d 398 (1985). Furthermore, the plaintiff did not produce any evidence to satisfy the elements of a violation of § 52-570. We conclude, therefore, that the trial court did not abuse its discretion in denying the plaintiff's amendment.

We affirm the judgment rendered in favor of the defendants on the plaintiff's complaint.

## III

In the second of these consolidated appeals, the plaintiff appeals from the judgment of contempt rendered on January 2, 1998. We affirm the judgment of the trial court.

Following an evidentiary hearing on the defendants' motion for contempt, the trial court found that the plaintiff's actions during an incident on July 1, 1997, involving an altercation with the defendants, were wilful and in violation of the permanent injunction issued on April 8, 1997. Pursuant to the injunction, the plaintiff had been enjoined from "trespassing or entering on the property of the defendants," and from "any and all further acts of harassment against the defendants." In finding the plaintiff in contempt, the trial court credited the testimony of the defendants, which was corroborated in some respects by the observations of a police officer. The court awarded the defendants $1485 as reasonable attorney's fees pursuant to General Statutes § 52-256b,[7] and $275.55 as a fine, payable to the defendants to

---

[7] General Statutes § 52-256b (a) provides: "When any person is found in contempt of any order or judgment of the Superior Court, the court may award to the petitioner a reasonable attorney's fee and the fees of the officer serving the contempt citation, such sums to be paid by the person found in contempt."

compensate them for losses sustained "to defend the breach of peace charge, which arose out of the plaintiff's conduct and which was ultimately nolled."

While the plaintiff's statement of issues[8] appears to raise the propriety of the finding of contempt, her brief[9] adequately addresses only a purported abuse of discretion by the court in imposing the compensatory fine of $275.55. Because the plaintiff does not contest the findings relied on by the court to conclude that her actions were wilful and in violation of the court order, we again find it unnecessary to recite specific facts found by the trial court, except as they relate to the sole issue presented.

The police officer who responded to the scene of the altercation ultimately gave both the plaintiff and the defendant Pauline Mansfield a summons for breach of the peace. The trial court accepted the defendants' evidence that they had incurred attorney's fees of $275.55 to defend the breach of the peace charge, which had resulted from the plaintiff's actions in contempt of the court order. The issue on appeal is whether the award of $275.55, as a compensatory fine, is improper as a matter of law and, if not, whether the court abused its discretion in awarding this amount.

There is no question that the contempt order was a civil order. See *CFM of Connecticut, Inc.* v. *Chowdhury,*

---

[8] The plaintiff stated the issue: "Did the court abuse its discretion in finding the plaintiff in civil contempt for an incident in which the defendants were arrested by the investigating police officer, and in imposing as a part of the penalty for such contempt the costs incurred by the defendants in defending against the criminal prosecution initiated by the police officer and the state's attorney?"

[9] The sole reference to the trial court's finding of contempt appears to be that "the court abused its discretion in finding the plaintiff in contempt, and punishing her, for the discretionary actions of the arresting officer and the state's attorney in arresting and prosecuting the defendant in connection with that incident. . . . [T]he arrest and prosecution of the defendant was apparently a part of the court's basis in holding the plaintiff in contempt."

38 Conn. App. 745, 748–49, 662 A.2d 1340 (1995), aff'd, 239 Conn. 375, 685 A.2d 1108 (1996). "Sanctions for civil contempt may be either a fine or imprisonment; a fine may be remedial or it may be the means of coercing compliance with the court's order and compensating the complainant for losses sustained. . . . The fine imposed for a civil contempt may be payable to the complainant as compensation for his loss." (Citations omitted.) *Dunham* v. *Dunham*, 217 Conn. 24, 28 n.3, 584 A.2d 445 (1991). Because a compensatory fine may be imposed as part of a civil contempt, our sole remaining inquiry is whether the trial court abused its discretion. Our review of the record fails to disclose any abuse of discretion; the plaintiff has also failed to demonstrate such.

The appeal challenging the judgment on the counterclaim is dismissed; the judgments are affirmed.

In this opinion the other judges concurred.