GARY J. WILSON *v.* CITY OF STAMFORD
(AC 24013)

Foti, Schaller and Berdon, Js.

Argued September 22, 2003—officially released February 3, 2004

*Gary J. Wilson*, pro se, the appellant (plaintiff).

*Scott Wilson Williams*, with whom, on the brief, was *James D. Moran, Jr.*, for the appellee (defendant).

*Opinion*

SCHALLER, J. The plaintiff, Gary J. Wilson, appeals from the decision of the workers' compensation review board (board) reversing the determination by the workers' compensation commissioner for the seventh district (commissioner) that the plaintiff was entitled to health insurance while he was receiving medical benefits for a compensable injury. On appeal, the plaintiff claims that the board improperly determined that he was not entitled to benefits pursuant to General Statutes § 31-284b (a). We affirm the decision of the board.

The commissioner found the following facts. The plaintiff was a member of the Stamford police depart-

ment. On approximately July 8, 1991, the plaintiff suffered from a heart condition commonly referred to as a myocardial infarction. The plaintiff established his claim pursuant to General Statutes § 7-433c[1] and began receiving benefits pursuant to § 31-284b.[2] At the hearing before the commissioner, the parties narrowed the issue to whether the plaintiff was eligible to receive benefits pursuant to § 31-284b when the plaintiff was receiving medical benefits, but not indemnity benefits. The commissioner determined that the plaintiff was entitled to receive benefits pursuant to § 31-284b while he was receiving either indemnity or medical benefits, as a result of his compensable injury of July 8, 1991. The board reversed the commissioner's determination on the basis of its holding in *Graham* v. *University of Connnecticut Health Center*, 4418 CRB-6-01-7 (July 23, 2002), and our holdings in *Kelly* v. *Bridgeport*, 61 Conn. App. 9, 762 A.2d 480 (2000), cert. denied, 255 Conn.

[1] General Statutes § 7-433c provides in relevant part that "in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment . . . ."

[2] General Statutes § 31-284b (a) provides in relevant part: "In order to maintain, as nearly as possible, the income of employees who suffer employment-related injuries, any employer who provides accident and health insurance or life insurance coverage for any employee or makes payments or contributions at the regular hourly or weekly rate for full-time employees to an employee welfare plan, shall provide to the employee equivalent insurance coverage or welfare plan payments or contributions while the employee is eligible to receive or is receiving compensation pursuant to this chapter . . . . As used in this section, 'income' means all forms of remuneration to an individual from his employment, including . . . health insurance coverage . . . ."

933, 767 A.2d 104 (2001), and *Auger* v. *Stratford,* 64 Conn. App. 75, 779 A.2d 773 (2001). The board held that the plaintiff was not entitled to benefits pursuant to § 31-284b while receiving only medical benefits. This appeal followed.

"As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals. 'The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . *Besade* v. *Interstate Security Services,* 212 Conn. 441, 449, 562 A.2d 1086 (1989). . . . It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and review board. . . . A state agency is not entitled, however, to special deference when its determination of a question of law has not previously been subject to judicial scrutiny. . . . *Duni* v. *United Technologies Corp.,* 239 Conn. 19, 24–25, 682 A.2d 99 (1996); *Davis* v. *Norwich,* 232 Conn. 311, 317, 654 A.2d 1221 (1995). . . .'

"The interpretation of § 31-284b is a matter of statutory construction. 'Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter.' . . . *General Motors Corp.* v. *Dohmann,* 247 Conn. 274, 286, 722 A.2d 1205 (1998); *Ferrigno* v. *Cromwell Development*

*Associates,* 244 Conn. 189, 195, 708 A.2d 1371 (1998)." (Citation omitted.) *Kelly* v. *Bridgeport,* supra, 61 Conn. App. 13–14.

The plaintiff argues that the board improperly interpreted the statutes. Section 31-284b provides in relevant part that an employer "shall provide to the employee equivalent insurance coverage or welfare plan payments or contributions while the employee is eligible to receive or is receiving compensation pursuant to this chapter . . . ." The plaintiff contends that the word "compensation," as it is used in § 31-284b, is defined by General Statutes § 31-275 (4). Section 31-275 (4) provides in relevant part that " '[c]ompensation' means benefits or payments mandated by the provisions of this chapter, including, but not limited to, indemnity, medical and surgical aid or hospital and nursing service required under section 31-294d and any type of payment for disability . . . or any adjustment in benefits or payments required by this chapter." The plaintiff's argument is that under § 31-275 (4), compensation includes medical benefits and because he was receiving medical benefits, he qualified for benefits under § 31-284b.

In *Kelly* v. *Bridgeport,* supra, 61 Conn. App. 9, we held that an employee who is receiving only medical benefits is not eligible for benefits pursuant to § 31-284b. Part of our holding in *Kelly* was premised on the language of General Statutes (Rev. to 1991) § 31-284b, which contained language different from the current statute. Section 31-284b was revised in July, 1991, by Public Acts 1991, No. 91-32, § 8 (P.A. 91-32). Prior to the revision, "the employer's obligation to provide insurance coverage" was conditioned on the "employee's receipt of . . . 'workers' compensation payments pursuant to this chapter.' " *Kelly* v. *Bridgeport,* supra, 14 n.4. Section 8 of P.A. 91-32 eliminated the phrase "workers' compensation payments pursuant to this chapter" and substituted "compensation pursuant to

this chapter . . . ." In *Kelly*, "we [concluded] that the term 'compensation payments' as used in § 31-284b (a) does not include payments for medical care after the indemnity compensation period has ceased. The statute mandates that an employer is required to continue insurance benefits only while an employee is receiving 'compensation payments' for disability under the Workers' Compensation Act [(act), General Statutes § 31-275 et seq.]." *Kelly* v. *Bridgeport*, supra, 16–17.

The Supreme Court has, in *Weinberg* v. *ARA Vending Co.*, 223 Conn. 336, 612 A.2d 1203 (1992), interpreted the importance of the changes wrought by P.A. 91-32. In an illuminating opinion, the Supreme Court stated that the "legislative history of No. 91-32 of the 1991 Public Acts indicates that it was intended to be a technical amendment. In commenting on the bill on the floor of the Senate, Senator James H. Maloney, senate chairman of the joint standing committee on labor and public employees, described the bill as 'the bill that makes technical recodification of the Workers' Compensation statute' and that 'cleans up the statute in regard to Workers' Compensation.' 34 S. Proc., Pt. 3, 1991 Sess., p. 836. Similarly, in presiding over a hearing of the joint standing committee, Maloney described the bill as 'a technical revision in [e]ffect to the existing statute.' Conn. Joint Standing Committee Hearings, Labor and Public Employees, 1991 Sess., p. 16. He went on to state: 'So we're not really dealing with changes in the substantive legislation today. If there are substantive changes that are made because of the draft, we do want to hear about that because that's not what's supposed to have occurred with this instrument.' Id. Commissioner John Arcudi of the compensation review division, who participated in formulating the proposed revisions, also testified at the hearing that 'the purpose of the bill [was] not to change substance, but to try to simplify language and eliminate archaic language, reduce language if pos-

sible . . . .' Id., p. 17. Finally, in commenting on the bill on the House floor, Representative Joseph A. Adamo, house chairman of the joint standing committee on labor and public employees, stated that the bill 'brings into focus a new section of describing all the definitions that were utilized and sprinkled throughout the entire chapter.' 34 H.R. Proc., Pt. 5, 1991 Sess., pp. 1959–60. When viewed together, the foregoing statements make clear that *the definition of 'compensation' provided in the 1991 amendment merely clarified the term as it had already been used throughout the act and did not enact any substantive change in the law.*" (Emphasis added.) *Weinberg* v. *ARA Vending Co.*, supra, 346–47; see also *Luce* v. *United Technologies Corp.*, 247 Conn. 126, 136–37, 717 A.2d 747 (1998) (P.A. 91-32 was technical amendment that did not change substantive law).

Because our Supreme Court has determined that P.A. 91-32 was a technical amendment, P.A. 91-32 did not change the law, but merely clarified the law. See *Greenwich Hospital* v. *Gavin*, 265 Conn. 511, 520–24, 829 A.2d 810 (2003). On the basis of the doctrine of stare decisis, we stand by our holding in *Kelly* v. *Bridgeport*, supra, 61 Conn. App. 16, that compensation "does not include payments for medical care after the indemnity compensation period has ceased."[3] The plaintiff accordingly was not entitled to benefits pursuant to § 31-284b.

The decision of the workers' compensation review board is affirmed.

In this opinion FOTI, J., concurred.

---

[3] "[T]he doctrine of stare decisis counsels that a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it." (Internal quotation marks omitted.) *George* v. *Ericson*, 250 Conn. 312, 318, 736 A.2d 889 (1999). "[I]n assessing the force of stare decisis, our case law has emphasized that we should be especially cautious about overturning a case that concerns statutory construction." (Internal quotation marks omitted.) *Ferrigno* v. *Cromwell Development Associates*, 244 Conn. 189, 202, 708 A.2d 1371 (1998). Hence, our decision *stare decisis et non quieta movere.*

BERDON, J., concurring. I concur in the result reached by the majority only because our Supreme Court's three to two decision in *Weinberg* v. *ARA Vending Co.*, 223 Conn. 336, 612 A.2d 1203 (1992), requires that I do so. Nevertheless, I wish to point out, as Justice Covello did in his dissent in *Weinberg*, that "compensation benefits . . . means *any compensation from any source* . . . ." (Emphasis added; internal quotation marks omitted.) Id., 351 (*Covello, J.*, dissenting). The plain language of General Statutes § 31-275 (4) defines compensation to include medical benefits, stating: " 'Compensation' means benefits or payments mandated by the provisions of this chapter, including, but not limited to . . . *medical* . . . aid . . . ." (Emphasis added.) Unfortunately, the majority in *Weinberg* looked beyond the plain language of the statute and relied on the statute's legislative history for its result.

Our legislature, in passing Public Acts 2003, No. 03-154, recently pointed out to this court and our Supreme Court that the "meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is *plain and unambiguous* and does not yield absurd or unworkable results, extra-textual evidence of the meaning of the statute *shall not* be considered." (Emphasis added.) Public Acts 2003, No. 03-154.[1]

Accordingly, although I believe that the definition of compensation includes medical benefits, I concur in the result of the majority because of our Supreme Court's decision in *Weinberg* v. *ARA Vending Co.*, supra, 223 Conn. 336.

---

[1] In other words, the legislature says what it means and means what it says.